†EDWARD H. RHOADES ET AL. v. TOLEDO (CITY) ET AL.

1. ORDINANCE TO CONDEMN IS FOR EXPENDITURE OF MONEY AND AUDITOR'S CERTIFICATE IS REQUIRED.

A municipal ordinance, providing for the condemnation of private property for street purposes, is an ordinance for the expenditure of money within the meaning of section 2702 of the Revised Statutes, and it is essential to the validity of such ordinance that the city auditor duly make and file the certificate required by said section.

2. COST OF CONDEMNING LAND FOR STREET CANNOT BE ASSESSED BACK ON ABUTTING OWNERS.

It is not competent for a city council, in an ordinance directing the appropriation of lands for the extension of a public street, to require that the costs of the appropriation proceeding, including the compensation that may be awarded to the owners, shall be assessed back upon the abutting property of the same owners. Such action on the part of the council is compelling them to donate land without compensation, and is forbidden by sec. 19, art. 1, and sec. 5, art. 13 of the constitution of this state, and by the fourteenth amendment to the constitution of the United States.

---

†The following entry was made in the supreme court: "It appearing from the statements of counsel that the city has acquired the ownership of the property upon which the special assessment was made, the questions involved herein have become of an abstract nature, and the judgment is affirmed." 51 O. S., 562.

The circuit court opinion was disapproved in Tyler v. Columbus, *post.* 427.

Appeal from the Court of Common Pleas of Lucas county.

SCRIBNER, J. (orally.)

This case comes into this court by way of appeal from the judgment rendered therein by the court of common pleas. The proceeding is for an injunction to restrain the city of Toledo from proceeding to condemn certain lands described in the petition, for street purposes. The plaintiffs show in their petition that on August 9, 1886, the common council of the city of Toledo passed a resolution, a copy of which is attached to the petition, and which is as follows:

"A resolution declaring it necessary to lay-off, open and extend Summit avenue.

"Resolved, That in the opinion of the common council of the city of Toledo, it is necessary to lay-off, open and extend Summit avenue from its present terminus to the northerly boundary line of the city, and the intent is hereby declared to condemn and appropriate to the public use for the purpose of said avenue, the following described property, to-wit, a strip of land 99 feet in width, being 49½ feet on each side of a line commencing at a point where the center line of Summit avenue intersects the northerly line of the S. W. ¼ sec. 21, T. 9 S. R. 8 E.; thence northeasterly at an angle of 15¼ degrees to the left from said centre line of Summit avenue produced across the Leon Guion tract of land until it intersects the northerly corporation line of the city of Toledo, in accordance with the plans and profiles to be on file in the office of the city civil engineer. All parties claiming damages for the foregoing improvement must file their claims therefor with the city clerk within four weeks from the first publication of this resolution, or within twenty days after service of written notice of the passage of the same, and that a resolution declaring it necessary to lay-off, open and extend Summit avenue, adopted August 31, 1885, be and is hereby repealed."

The plaintiffs, at the date of the filing of the petition herein, and at the date of the adoption of the foregoing resolution by the common council, were the owners of the Guion tract of land described therein. It consisted of about eighty-six acres of ordinary farming land, and was used for farming purposes.

On October 11, in the same year, the city council passed the following ordinance:

"An ordinance to lay-off, open and extend Summit avenue.

"Section 1. Be it ordained by the common council of the city of Toledo, that Summit avenue be laid off, opened and extended and made a uniform width of ninety-nine feet from its present terminus to the northerly line of the city of Toledo.

"Section 2. That for the purpose of laying off, opening and extending said Summit avenue, and making the same a uniform width of ninety-nine feet between the aforesaid points, it is necessary and hereby ordered that the following described parcels of lots or lands be appropriated by the city of Toledo, to-wit: (Here follows a description of the premises as contained in the resolution declaring it necessary to make the improvement )

"Section 3. That the cost and expense of laying off, opening, extending and widening and straightening said street, including all expenses incident to and resulting from the appropriation of the lots and parcels of land hereinbefore described, shall be assessed upon the lots and lands bounding and abutting thereon in proportion to the foot front, and the amount so assessed shall be payable in two installments

"Section 4. That the city solicitor is hereby directed to institute the necessary proceedings in the probate court of Lucas county for the condemnation and appropriation of the lands specified for the above-named purposes."

In November following the city solicitor, in obedience to the requirements of the city council, instituted proceedings in the probate court for the condemnation of the lands described in the ordinance for the purposes therein mentioned; and shortly thereafter this action was brought to enjoin the city and the city solicitor from going forward with the proceedings to condemn.

1. One ground of objection to this proceeding is, that the ordinance provides for the expenditure of money, and there had not been previously filed the certificate of the city auditor required by sec. 2702, Rev. Stat. It is conceded that no such certificate was ever filed, and the question presented is as to whether or not the provisions of sec. 2702 in this regard apply to an ordinance for the condemnation of property. It is contended on the part of the city solicitor that for several reasons this requirement has no application. Among other things, it is urged that it cannot be known until after the verdict of the jury has been rendered what the amount of the expenditure will be; and that it is within the power of the city at

.any time within six months after the rendition of the verdict to elect not to take the property; in that case subjecting itself only to the payment of the cost and expenses of conducting the proceedings.

Section 2702 Rev. Stat., as amended April 15, 1889, is as follows: "No contract, agreement or other obligation involving the expenditure of money, shall be entered into, nor-shall any ordinance, resolution or order for the appropriation or expenditure of money, be passed by the council, or by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there is no auditor, the clerk thereof, shall first certify that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certificate shall be filed and immediately recorded; and the sum so certified shall not thereafter be considered unappropriated until the corporation is discharged from the contract, agreement or obligation, or so long as the ordinance, resolution or order is in force; and all contracts, agreements or other obligations, and all ordinances, resolutions and orders entered into or passed, contrary to the provisions of this section, shall be void, provided," etc.

In this connection attention is also called by the city solicitor to an amendatory act permitting the city council of Toledo to issue bonds for the payment of expenses incurred, including the award of compensation, in condemnation proceedings, and further providing that where the council elects to issue such bonds, sec. 2702 shall have no application.

The provision referred to is contained in sec. 2264, and is as follows:

"When the council of said cities of the third grade of the first class shall determine to issue bonds in anticipation of the collection of assessments provided for in this section, the provisions of section two thousand seven hundred and two shall not apply."

The city of Toledo is a city of the third grade of the first class.

The main proposition is discussed in the opinion of the court in the case of Ryan v. Hoffman, 26 O. S., 109. In that case objection was made that the council was proceeding to appropriate lands for the use of the city without the required certificate mentioned in sec. 2702. The court held, however, that:

"Section three of the act of April 16, 1874, (which is sec. 2702 of the present statute) is not applicable to ordinances providing for the expenditure of money, passed prior to the date of the act, or to ordinances passed subsequent to the date of the act, appropriating money to pay expenditures made under such prior ordinances."

In other words, the court decided that where the expenditure was provided for under previous legislation—under legislation adopted before the passage of the Burns act, so-called—the provisions of that act had no application. Judge Gilmore, in disposing of this question, said:

"The remaining objection is, that section three of the act of April 16, 1874, which provides that no ordinance or order for the expenditure of money shall take effect until the city auditor shall certify to the city council that there is money in the treasury especially set apart to meet such expenditure, applies in this case; and that no such certificate was given by the auditor to the council before or since the passage of the ordinance of March, 1875, appropriating the money to pay for the land in question.

"The effect and operation of this law is misapprehended. The first clause of the third section is: 'That from the taking effect of this act no ordinance or other order for the expenditure of money shall be passed by the city council * * * without stating specifically in such ordinance or order the items of expense to be made under it, and no such ordinance or order shall take effect until the auditor of said city shall certify to the city council that there is money in the treasury especially set apart to meet such expenditure.' etc

"The law, by its own terms, only operates prospectively. It conditionally prohibits the passage and taking effect of ordinances for the expenditure of money after its passage, and does not apply to ordinances appropriating money to pay expenditures incurred under ordinances in force at the time the law took effect. The ordinance condemning the land in question, is an ordinance for the expenditure of money, but it was passed in September, 1872, long before the law in question was passed, and therefore it is not affected by it; and the passage of the ordinance of March, 1875, appropriating money to pay for the land condemned under the former ordinance, was not in contravention of the third section of the law. Consequently this objection is of no avail to the respondents."

If the statute in question had no application to a resolution or ordinance providing for the condemnation of lands, it was entirely unnecessary for the court

to base its decision, as it did, upon the ground that the law operated prospectively only, and, therefore, did not affect the case pending before it. In the opinion it is declared in express terms that an ordinance providing for the appropriation of lands was within the act, but it was held that the ordinance there objected to was not affected by it for the reason that the law operated prospectively only, and, therefore, did not in any manner affect the ordinance which was before the court, which had been adopted previously to its passage.

Next as regards sec. 2264 as amended, providing that where the council of a city of the third grade of the first class—which means Toledo—"shall determine to issue bonds in anticipation of the collection of assessments provided for in this section, the provisions of sec. 2702 shall not apply." It appears to us that this amendment, by implication, recognizes the applicability of sec. 2702 to proceedings for the condemnation of lands where the council has not determined to issue bonds in anticipation of the collection of assessments.

Sec 2264 is one making provision generally for special assessments:

"In the cases provided for in the last section, and in all cases where an improvement of any kind is made of an existing street. alley or other public highway, the council may decline to assess the costs and expenses in the last section mentioned, or any part thereof. of the costs and expenses or any part thereof. of such improvement, except as hereinafter mentioned. on the general tax list. in which event such costs and expenses, or any part thereof which may not be so assessed on the general tax list, shall be assessed by the council on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation. either in proportion to the benefits which may result from the improvement. or according to the value of the property assessed. or by the foot front of the property bounding and abutting upon the improvement. as the council by ordinance setting forth specifically the lots and lands to be assessed. may determine before the improvement is made. and in the manner and subject to the restrictions herein contained; and the assessments shall be payable in one or more installments; and at such times as the council may prescribe. but this action shall be subject to the provisions of chapter two of this division (relating to Cincinnati). and in cities of the first and third grades (Toledo) of the first class, at the time when the council determines that the cost of such improvement is to be assessed as above provided, it shall also determine in how many installments said assessments shall be payable; at what intervals, if payable in more than one installment; also, whether or not bonds shall be issued in anticipation of such assessment," etc.

That is to say, before the improvement is made, the council shall determine the method of assessment to be adopted; whether by the feet front, or by benefits, or by the duplicate valuation. It shall also determine at the same time in how many installments the assessment shall be payable; and also whether bonds shall be issued in anticipation of such assessment.

The amendment to which our attention has been called by the city solicitor. and which I have read, provides that when the council of a city of the third grade of the first class shall determine to issue bonds in anticipation of the collection of assessments provided for therein, sec. 2702 shall not apply. This determination is to be made at the time the council fixes the method to be adopted in making the assessment; when that is done, the provisions of the section in question shall not apply.

Sec. 3 of the ordinance passed by the council October 11, 1886, which I have already read, and which undertakes to provide for the method of paying the expenses of the proposed improvement, requires:

"That the costs and expenses of laying off, opening, extending and widening and straightening said street. including all expenses incident to and resulting from the appropriation of the lots and parcels of land hereinbefore described shall be assessed upon the lots and lands bounding and abutting thereon in proportion to the foot front; and the amount so assessed shall be payable in two installments."

Here the requirement of sec. 2264 is complied with. The council is to determine before the making of the improvement, whether the assessment shall be by the foot front, by the duplicate valuation or by benefits. The council has determined that it shall be by the foot front.

The statute also declares that the council shall at the same time determine the number of installments in which the assessment shall be paid; the council has here provided that the assessment shall be paid in two installments.

The statute further provides that the council shall at the same time determine whether or not bonds shall be issued in anticipation of such assessments. The council has not in this ordinance taken any action in regard to that matter; it has not said whether bonds shall or shall not be issued in anticipation of the assessment; and, according to the amendatory provision of sec 2264, it is only where the council has determined to issue bonds in anticipation of the assessment that sec. 2702 shall not apply.

According to the views expressed in the opinion delivered in Ryan v. Hoffman, supra, an ordinance providing for the condemnation of lands for public use is an ordinance providing for the expenditure of money, and is, therefore, within the requirements of sec. 2702. Had the council seen proper at the time of the adoption of the ordinance, to declare that bonds should be issued to raise money in anticipation of the assessment, it would then, by the express terms of the statute, as amended, have avoided the necessity of procuring the certificate of the city auditor as required by sec. 2702.

It is said further by the city solicitor in this connection that by the terms of sec. 2705 the city council may issue certificates of indebtedness, and that, therefore, it is excused from procuring the certificate of the auditor.

Sec. 2705 provides: "If the council makes any special assessment payable in annual installments as authorized in the fourth chapter of the seventh division of this title, it shall have authority to borrow upon the credit of the corporation a sum of money sufficient to pay the estimated cost and expense of the improvement, and shall have authority to issue bonds, notes or certificates of indebtedness pledging the faith and credit of the corporation for the payment of the principal and interest of such bonds, notes or certificates of indebtedness, which interest shall not exceed the rate of seven per cent. per annum payable annually."

The securities here mentioned are all placed upon the same footing, and we think it immaterial whether the council issue bonds, certificates or notes; the same rule applies to each class.

It is true that it would be difficult for the city auditor to make the required certificate, for he could not know exactly how much money would be required to meet the proposed expenditure until the jury had returned their verdict and the case had been finally disposed of; but he may exercise his best judgment and certify to the best of his ability, bringing to his aid his previous knowledge and experience in such matters.

It was decided in the case of Bond v. Madisonville (village), 1 O. C. D., 581, that sec. 2702 applies to a contract between a municipal corporation and an attorney at law for professional services, and the fact that the amount to be paid cannot be definitely fixed at the time of the employment, does not exempt the case from the operation of the section; a like ruling seems to have been made upon a similar statute in California. 29 Cal., 180.

2. The further objection is made that the ordinance in question is unconstitutional in this: that it proposes to take private property for public uses without compensation to the owner, as required by the constitution of this state; also, that it is in contravention of the fourteenth amendment to the constitution of the United States, which forbids the taking of private property without due process of law. The plaintiffs complain in this regard as follows:

"The plaintiffs further say that by said ordinance it was ordered and directed that the entire costs and expenses of such appropriation, including the compensation to be awarded for the land so taken, be assessed by the foot front on the lots and lands bounding and abutting on said avenue so improved.

"That the strip or parcel of land so sought to be appropriated is bounded wholly by other land of the plaintiffs, being the remainder of said tract of land above described. and the defendant, the city of Toledo and its officers and agents. allege and give out that they have the right, and that it is their intention to assess the entire costs and expenses of such

appropriation, including the compensation that may be awarded for the parcel so sought to be appropriated, on said remaining land of the plaintiffs.

"The plaintiffs say that if the said city shall be permitted to impose on said remaining lands of the plaintiffs, the burden of such assessment, as it now threatens, the plaintiffs will be required to pay in the form of assessments, the entire compensation that may be awarded to them for the parcel of land so sought to be appropriated, and in addition thereto, all the costs and expenses incident to such appropriation, and that thereby the plaintiffs will be deprived of their property without compensation, in violation of the constitution of the state of Ohio.

"The plaintiffs say that the said city proposes and threatens to assess the said entire compensation on said remaining land arbitrarily by the foot front without regard to benefits.

"That the said remaining land of the plaintiffs will in no part or respect be benefited by the extension of said avenue across the same as directed by the ordinance, but on the other hand, such extension will materially injure said remaining land for all purposes to which it can be devoted, and will divide the said tract in such manner that it cannot be advantageously platted for purposes of occupation and sale.

"That the assessment by the foot front on said remaining land of the entire compensation that may be awarded for the part so sought to be appropriated, or of any part of such compensation, will of necessity be arbitrary, and will be unjust, oppressive and contrary to law.

"That plaintiffs say, that if under the forms of law, or the real or pretended construction of any statute of this state the said land can be taken from the plaintiffs, and the plaintiffs can be compelled to pay the compensation awarded therefor in the form of assessments on their said remaining land, as is contemplated by said proceedings, they will be deprived of their property without due process of law, and such proceedings are in violation of the constitution of the United States, which forbids any state from depriving any person of his property without due process of law."

It is not denied on the part of the city that it intends to assess upon the remaining lands of the plaintiffs the entire cost of the contemplated appropriation, including the amount that may be awarded for compensation. Indeed, the ordinance expressly provides that such shall be the method of payment.

"The costs and expenses of laying off, opening and extending and widening and straightening said street, including all expenses incident to and resulting from the appropriation of the lots and parcels of land hereinbefore described, shall be assessed upon the lots and lands bounding and abutting thereon in proportion to the foot front, and the amount to be assessed shall be payable in two installments."

That is to say: These plaintiffs are the owners of the tract of eighty-six acres of land lying next the northerly boundary of the city. A small portion of it extends beyond the corporation line into the adjacent township. The city declares its purpose to take a strip of land ninety-nine feet in width through that part of the farm of the plaintiffs which lies within the city, for public use. It directs the city solicitor to take the usual steps for the empaneling of a jury in the probate court to determine the compensation to be paid to the plaintiffs for the land so taken, and declares that the entire expense of the proceeding, including the amount of compensation which may be awarded to the plaintiffs for the lands taken, and the costs incurred in conducting the proceeding, shall be assessed upon the abutting lands; in other words, that the entire expense shall be borne by the plaintiffs whose lands are taken for the public use. The practical result of this action on the part of the city is to require the plaintiffs to donate a strip of valuable land, ninety-nine feet in width, for the public use.

Let it be carefully noted in this connection that the ordinance here in question is not for the ordinary improvement of an existing street. It provides simply for an appropriation of lands for street purposes, and for throwing them open when acquired to the uses of the public. It is true that the purpose is declared of extending Summit avenue, which is an existing thoroughfare, but no provision is made for improving, in any form, the part which is to be extended. It should be borne in mind, also, that the owners of all the abutting property are the owners of the strip sought to be appropriated. A ruling of the supreme court in City v. Wick, 18 O. S., 304, supports, to some extent, the claim made in behalf of the city, that a proceeding of this character is constitutional, legal and proper. The syllabus reads as follows:

"An assessment upon lands fronting on a street to reimburse the amount of compensation paid the owner for his other land taken for the use of the street, is authorized by the statute (S. & S. Stat. 334, sec. 1), and is not in violation of the constitutional provision which guarantees to owners of land so taken, a full compensation 'without deduction for benefits.'"

The statement of the case, which is very brief, is this:

"The city council of Cleveland, having established a new street over the lands of Wick, and having regularly condemned and paid him a full compensation for his land so taken, assessed a tax upon all lands fronting on the street, including other lands of Wick, to reimburse the expenditure so made  The tax remaining unpaid, it was placed upon the county duplicate for collection, but not till one year after the time prescribed by statute.  Wick then brought his action to enjoin the collection of the tax, both on the ground that it was not placed upon the duplicate at the proper time, and also because, as he claims, it was assessed in violation of section 19, of article 1, of the state constitution, which declares that the compensation, to be paid to a party for his land so taken, 'shall be assessed by a jury, without deduction for benefits to any property of the owner.'"

It appears in this case, as shown by the report, that the proceeding for condemnation had been conducted to its final determination, the award of the jury made, and the amount assessed by the jury paid to the plaintiff, Wick, in accordance with the requirements of the statute.   Some time afterwards an assessment was made upon the abutting lands of Mr. Wick of the amount so assessed by the jury in his favor, and paid to him.   It does not clearly appear from the report whether it was all assessed upon him, or whether a portion of it was assessed upon lands of other parties, but the plain inference from all that appears in the case, is that the entire amount was assessed upon his lands.   Nor does it appear in the record what method was adopted by the city in making the assessment; whether it was by the feet front, by benefits, or according to value   If the city council, after having appropriated the property and paid for it in compliance with the constitution and law, proceeded to make the assessment according to benefits, based upon the finding and determination of a committee appointed under the statute to inquire into and report such benefits, thus affording an opportunity to the owner after the report of the committee was filed, to appear and present his exceptions, and be heard before an equalizing board, the same objection to the action of the council did not exist as appears in the case now under consideration.   It is our duty to follow the decision of the supreme court where the rule laid down applies to a case coming before us; but upon a careful consideration of the foregoing case it appears to us that it should not be regarded as determining the question here presented, namely, whether the mere requirement of the council in the ordinance directing the appropriation to be made that the entire cost thereof, including the expenses incident to the carrying on of the proceeding, shall be assessed upon the abutting lands, is conclusive upon the owners of the property proposed to be taken   It may not be out of place to here refer to the constitutional provisions bearing upon this controversy.   Section nineteen of the bill of rights is as follows:

"Private property shall ever be held inviolate, but subservient to the public welfare  When taken in time of war, or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner"

I next quote section five of article thirteen of the constitution:

"No right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or first secured by a deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law."

The compensation to be paid is to be ascertained by a jury in the mode prescribed by law.   Upon the filing of an application by the city under the statute

for the appropriation of lands for the public use, when the inquiry is made as to the amount of compensation to be awarded the owner, the jury is required to ascertain not only the value of the land actually taken, but also the damage or injury that may be worked to the adjoining property of the same owner by reason of the purpose to which the land taken is to be devoted, or the form in which, or the locality from which, it is taken. R. R. Co. v. Ball, 5 O. S., 568. The jury, in such case, is to determine whether the adjoining property will be injured, which is equivalent to requiring them to determine whether or not it will be benefited by such use. They are not permitted to deduct for benefits to the adjacent land, but they are required to ascertain the compensation which shall be made for injuries sustained by such land—by the parcel from which the land is taken by appropriation, in consequence of that appropriation. This must be done, and the compensation so ascertained must be paid before the council has any right to proceed with the proposed improvement. Is it consistent with these constitutional requirements to permit the council, when it directs the condemnation to be made, to determine that the abutting lands will be thereby benefited to an extent exceeding the value of the lands taken, when that very question is to be passed upon by the jury, which is to ascertain what, if any, compensation shall be made? It is the jury which shall be empaneled to assess the compensation that determines whether or not the abutting lands will be benefited, or whether they will be injured by the condemnation; but in this proceeding the council, at the time it declares the necessity for the appropriation, and directs the city solicitor to proceed to have the lands appropriated for public uses, provides, in the same ordinance, that the costs and expenses, including the amount awarded for compensation, shall be assessed upon the abutting lands of the owners whose lands are thus to be taken. This, of course, is done upon the assumption that the abutting property will be benefited by the proposed public use. Certainly the public authorities have the right to take lands of these plaintiffs for public use, but when it comes to determining the question as to whether or not the adjoining lands will be benefited by such use—by extending an avenue or opening a street through their farm, as is proposed here—it appears to us that they are entitled to have the question submitted to a jury as provided by the constitution.

The council has proceeded upon the assumption—has, in effect, undertaken to determine in advance, that in extending Summit avenue through the lands of the plaintiffs, the parcels which will be left on either side will be specially benefited to the extent of all the costs and expenses incurred, including the compensation which may be awarded for the lands taken. It appears to us that this action of the city council is entirely unwarranted, and is in conflict not only with the provisions of the constitution of this state above quoted, but with the fourteenth amendment to the constitution of the United States, by which it is provided that the property of a citizen shall not be taken without due process of law. It cannot be claimed with any show of justice or reason, that the mere declaration of the city council in taking private property for public use, that the abutting property of the owner will be benefited by such use to the extent of the value of the property taken, is a compliance with the requirements of either the state or federal constitution. Under the state constitution the jury determines the damages, if any, which accrue to the abutting property; but here the city council undertakes to determine in advance, arbitrarily, not only that the adjacent property will not be damaged, but that it will be benefited to the full extent of the cost of the improvement. If this be not so, they require the abutting property to bear this burden whether it is benefited or not.

Upon a trial to a jury, in considering the question of damages, they hear evidence, they view the premises and make their award accordingly. What a farce it is for the council to assess upon the abutting property, on the ground of special benefits thereto, the moneys awarded to the owners thereof by a jury acting under the constitution and laws, for damages which will be sustained by the same property in consequence of the action of the council! If this may be

lawfully done, it makes no difference how much damages the jury may award to the owners for the injury to the abutting property; the council may arbitrarily declare that it is benefited not only to the extent of the damages so awarded for the injury thereto, but also to the extent of the compensation allowed for the land taken and the costs of the proceeding. If the ordinance related solely to the ordinary improvement of an existing street, or if the owners of the abutting property were other than the owners of the strip proposed to be condemned, these objections would not apply. It is well settled that the council may, in the manner prescribed by law, assess upon abutting property the expense of making ordinary improvements of an existing street, to the extent that such abutting property is legally found to have been specially benefited by such improvements; and that owners of property abutting upon lands taken for a public use, but not owning any of the lands so taken, are not entitled to damages on account thereof.

It is where lands are taken for a public use, and a question arises as to whether or not the abutting lands of the same owner will be benefited or injured thereby, that the owner, by express provision of the constitution, is entitled to have this question passed upon by a jury, and is exempted from liability to abate from the compensation awarded him for the lands taken, anything on account of alleged benefits to the abutting property. See, generally, upon the propositions discussed above the following authorities: Railroad Co. v. Ball, 5 O. S., 568, *supra;* Railroad Co. v. Collett et al., 6 O. S., 182; McMicken v. Cincinnati, 4 O. S, 395; Watson's Executors v. Pleasant Township, 21 O. S., 667.

If, as appears to have been the case in Cleveland v. Wick, *supra,* the city authorities had gone regularly to work in the mode prescribed by law, after paying the compensation awarded, and ascertained whether or not the abutting property had been specially benefited by the proposed improvement, and had made an assessment accordingly, we should have felt ourselves concluded by the ruling of the supreme court in that case. But under the state of facts here presented, and for the reasons above stated, we think that the plaintiffs are entitled to the relief prayed for in their petition. The objectionable and illegal features of the ordinance above considered render it invalid as a whole, for it cannot be supposed that the council would have ordered the condemnation except upon the assumption that the expense to be incurred would be paid by the owners of the abutting property.

One other objection is made to these proceedings of the council. It is alleged in the petition that the purpose of the proposed improvement is to accommodate with a broad driveway, certain gentlemen who have a club house located a short distance beyond its northern terminus. While there appears to be some reason for making this claim, we do not feel justified in finding, upon the testimony produced, that the council acted in bad faith in passing the ordinance objected to; but upon the grounds before stated, an injunction will be granted as prayed for.

E. H. Rhoades and E. D. Potter, Jr., for plaintiffs in error.
W. H. A. Read and Bissell & Gorrill, for defendants in error.